**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| Whetstone Electronics, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:10-cv-00278-LED |
| | § | |
| Xerox Corporation, *et al.* | § | JURY TRIAL REQUESTED |
| | § | |
| Defendants. | § | |

**ANSWER AND AFFIRMATIVE DEFENSES OF
DEFENDANT BROTHER INTERNATIONAL CORPORATION**

Defendant, Brother International Corporation ("Brother") answers the Complaint ("Complaint") of Whetstone Electronics, LLC ("Plaintiff" or "Whetstone") as follows:

## I.      NATURE OF ACTION

1.      Brother admits that U.S. Patent No. 6,337,746 ("the '746 Patent") is entitled "Interface Card for Coupling a Computer to an External Device" and appears to be attached as Exhibit 1 to the Complaint. Brother admits that U.S. Patent No. 6,618,157 ("the '157 Patent") is entitled "Interface Card for Coupling a Computer to an External Device" and appears to be attached as Exhibit 2 to the Complaint.  Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this paragraph of the Complaint, and therefore denies them.

2.      As to itself, Brother denies the allegations of this paragraph.  As to other defendants, Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

3.      As to itself, Brother denies the allegations of this paragraph.  As to other defendants, Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

4.      Brother admits that Whetstone seeks damages and prejudgment interest from the defendants in this case.  Brother admits that Whetstone further seeks injunctive relief with regard to the defendants in this case.  Brother denies that Whetstone is entitled to any such relief as pertains to Brother.

## II.      PARTIES

5.      Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

6.      Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

7.      Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

8.      Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

9.      Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

10.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

11.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

12.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

13.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

14.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

15.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

16.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

17.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

18.     Brother admits the allegations in this paragraph of the Complaint.

19.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

### III.     JURISDICTION AND VENUE

20.     Brother admits the allegations of this paragraph.

21.     Brother admits that, for purposes of this action only, venue is proper under 28 U.S.C. §§ 1391(c) and 1400(b).  As to other defendants, Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

22.     Brother admits that, for purposes of this action only, it is subject to personal jurisdiction in this Court, although it denies that it has committed any infringement in the State of Texas or the Eastern District of Texas, as alleged.  Moreover, because Whetstone's allegations of infringement in the Complaint are so vague, Brother lacks knowledge or information sufficient to form a belief as to whether Plaintiff's cause of action arises from Brother's business contacts or other activities in the State of Texas and in the Eastern District of Texas, and thus Brother denies this allegation.  As to other defendants, Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

23.     Brother admits that it has provided and provides products in the United States, the State of Texas, and the Eastern District of Texas.  Because Whetstone's allegations with respect

to "services" are ambiguous, Brother lacks knowledge or information sufficient to form a belief with respect to any of Whetstone's allegations regarding "services," and therefore denies them. Brother denies that it has infringed, contributed to the infringement of, or induced the infringement of, Whetstone's patents.  Brother lacks knowledge or information sufficient to form a belief as to whether any entity uses Brother's products in the Eastern District of Texas, and therefore denies this allegation.  As to itself, Brother denies the remaining allegations of this paragraph.  As to other defendants, Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

## IV.    CLAIMS

### COUNT I INFRINGEMENT OF U.S. PATENT NO. 6,337,746

24.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

25.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

26.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

27.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

28.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

29.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

30.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

31.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

32.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

33.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

34.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

35.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

36.     Brother denies the allegations contained in this paragraph of the Complaint.

37.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

38.     As to itself, Brother denies the allegations contained in this paragraph of the Complaint. As to other defendants, Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

<u>COUNT II INFRINGEMENT OF U.S. PATENT NO. 6,618,157</u>

39.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

40.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

41.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

42.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

43.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

44.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

45.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

46.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

47.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

48.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

49.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

50.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

51.     Brother denies the allegations contained in this paragraph of the Complaint.

52.     Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

53.     As to itself, Brother denies the allegations contained in this paragraph of the Complaint. As to other defendants, Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

<u>EXCEPTIONAL CASE</u>

54.     As to itself, Brother denies the allegations contained in this paragraph of the Complaint. As to other defendants, Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

55.     As to itself, Brother denies that this is an exceptional case.  Brother admits that Whetstone seeks an award of enhanced damages, attorneys' fees, costs, and expenses. Brother denies that Whetstone is entitled to any of the requested relief. As to other defendants, Brother lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph of the Complaint, and therefore denies them.

**V.     DEMAND FOR JURY TRIAL**

56.     Brother admits the allegations in this paragraph of the Complaint.

## VI.    PRAYER FOR RELIEF

57.    Brother denies that Plaintiff is entitled to any of the relief set forth in the Prayer for Relief in the Complaint.

58.    Brother denies each and every allegation not specifically admitted in this Answer.

## VII.    AFFIRMATIVE DEFENSES

59.    Brother asserts the following affirmative and other defenses, reserving the right to modify, amend, and/or expand upon these defenses as discovery proceeds.

**FIRST AFFIRMATIVE DEFENSE
(FAILURE TO STATE A CLAIM)**

60.    Whetstone's Complaint fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE
(LACK OF STANDING)**

61.    Upon information and belief, Whetstone lacks standing to bring a suit for infringement of either the '157 Patent or the '746 Patent.

**THIRD AFFIRMATIVE DEFENSE
(FAILURE TO JOIN NECESSARY OR INDISPENSABLE PARTY)**

62.    Whetstone is not an assignee of record for either the '157 Patent or the '746 Patent and, as such, does not have authority to bring an action for alleged infringement of the Asserted Patents because the actual owner(s) of the patents have not been joined.

63.    Accordingly, for at least this reason, Whetstone's claims are barred because it has failed to join necessary and/or indispensable parties.

**FOURTH AFFIRMATIVE DEFENSE
(NON-INFRINGEMENT)**

64.    Brother has not directly or indirectly infringed any valid claim of the '157 Patent or '746 Patent, nor is Brother currently doing so, either literally or under the doctrine of equivalents.

**FIFTH AFFIRMATIVE DEFENSE**
**(INVALIDITY)**

65.     The claims of the '157 Patent and '746 Patent are invalid under Title 35 of the

United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

**SIXTH AFFIRMATIVE DEFENSE**
**(LACHES)**

66.     Whetstone is barred from recovery for the alleged infringement of the '157 Patent

and '746 Patent by the doctrine of laches.

**SEVENTH AFFIRMATIVE DEFENSE**
**(35 U.S.C. §§ 286-288 LIMITATION ON DAMAGES)**

67.     Whetstone's ability to recover from Brother is limited by 35 U.S.C. §§ 286-288.

**EIGHTH AFFIRMATIVE DEFENSE**
**(INEQUITABLE CONDUCT)**

68.     The '746 and '157 Patents are unenforceable due to inequitable conduct

committed during their prosecution. On information and belief, the named inventors, attorneys,

or agents who prepared or prosecuted the applications leading to the issuance of the '746 and

'157 Patents, or other persons who were substantively involved in the preparation or prosecution

of these applications (collectively, the "Applicants") were aware of information material to the

patentability of the claims of the '746 and '157 patents, but withheld that information from the

U.S. Patent and Trademark Office (the "PTO") with intent to deceive the PTO.

69.     The Applicants filed application number 08/987,212 ("the '212 application") with

the PTO on December 9, 1997; the final amended claims of the '212 application were issued as

the '746 Patent on January 8, 2002.

70.     The Applicants filed a continuation patent application, application number

09/969,473 ("the '473 application"), claiming priority to the '212 application, on October 1,

2001; the final amended claims of the '473 application were issued as the '157 Patent on September 9, 2003.

71.     During prosecution of the '212 application and the '473 application, each of the Applicants had a "duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability" of any of the claims in the '212 application or the '473 application. 37 C.F.R. § 1.56.  This "duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned." *Id.*

72.     Jan R. Coyle, William H. Avery, Jr., William H. Avery III, Donald E. Harris, and Daniel F. Kolbet expressly acknowledged their duty of disclosure in a declaration filed with the PTO on June 8, 1998 in the '212 application. The June 8, 1998 declaration stated, "We acknowledge our duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations § 1.56(a)." The identical declaration was also filed in the '473 application on October 1, 2001.

73.     The Applicants did not cite a single reference to the PTO during the prosecution of the '212 and '473 applications.

74.     Upon information and belief, one or more Applicants were aware of the following prior art during prosecution of the '212 and '473 applications, but withheld this information from the PTO with intent to deceive the PTO. This prior art is highly material to patentability, as shown below. The Applicants thus deceived the PTO and the public.

**MATERIAL REFERENCES IDENTIFIED DURING LITIGATION**

75.     Before the issuance of the '746 patent, one or more Applicants became aware of prior art material to the claims of the '746 and '157 patents that was identified during litigation

involving one or more Applicants, which they failed to disclose to the PTO with intent to deceive the PTO.

76.     On July 3, 2001, the PTO sent the Applicants a notice of allowance of all then pending claims of the '212 application. The PTO did not issue the '746 Patent until January 8, 2002. The Applicants' duty to disclose to the PTO information material to any claim of the '212 application did not end with the notice of allowance, but continued until the PTO's issuance of the '212 application as the '746 patent.

77.     On December 11, 2001, Electronics for Imaging, Inc. ("EFI") filed a declaratory judgment action against inventor Jan Coyle, the assignee of the '212 application, and Kolbet Labs, which was owned by inventor Jan Coyle. *Elecs. For Imaging, Inc. v. Coyle*, No. 3:01-cv-04853-MJJ (N.D. Cal. 2001).  In its complaint, EFI claimed that its JetStream product met every limitation of the allowed claims of the '212 application and was on sale by July 11, 1994, more than a year before the filing date of the '212 application.  EFI therefore claimed that its JetStream product anticipated each allowed claim of the '212 application.

78.     On January 8, 2002, in response to issuance of the '746 patent, EFI amended its complaint for declaratory judgment of December 11, 2001 to plead invalidity of the '746 Patent as being anticipated by the JetStream product.

79.     The Manual of Patent Examining Procedure stated that "[w]here the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the" PTO. Manual of Patent Examining Procedure § 2001.06(c) (8th ed. August 2001). The Applicants were aware of EFI's pending litigation as well as its allegations that the JetStream product anticipated every claim of the '212 application.

80.     On information and belief, EFI's complaint is material because it initiated litigation regarding "the subject matter for which a patent is being sought" and identified the JetStream product as anticipating the allowed claims of the '212 application.

81.     Despite being aware of the JetStream product and EFI's complaint, and despite being aware of their materiality, the Applicants failed to disclose any information regarding them to the PTO with intent to deceive the PTO.

82.     On information and belief, some or all Applicants knew disclosure of this information would have had a material impact on the patentability of the applications that led to the '746 and '157 patents.

83.     On information and belief, some or all Applicants intentionally withheld this information from the PTO with intent to deceive the PTO, as the disclosure of any one of these references would have had a material impact on the patentability of the '212 and '473 applications.

84.     Whetstone previously litigated the '157 and '746 patents in *Whetstone Elecs. v. Epson Am., Inc., et al.*, No. 6:08-cv-00317-LED-JDL, (E.D. Tex. 2008) ("Whetstone I").  During Whetstone I, the defendants made the following additional allegations:

a.  On December 11, 2001, counsel for EFI sent counsel for inventor Jan Coyle a letter stating that the JetStream product anticipated the allowed claims of the '212 application and was on sale by July 11, 1994, more than a year before the filing date of the '212 application, and that its JetStream product therefore anticipated each allowed claim of the '212 application.

b.  The JetStream product was subsequently made known to at least one of the named inventors, William H. Avery, Jr., who kept one or more notebooks ("Avery Jr.

Notebook"). The Avery Jr. Notebook refers to the JetStream product in a December 18, 2001 entry and, on information and belief, appears to refer to the JetStream product again in later entries over the following weeks under names such as "MGI card."

c. On December 17, 2001, counsel for EFI sent counsel for inventor Jan Coyle a letter stating that the EFI Fiery XJ product anticipated the allowed claims of the '212 application and was on sale by August 1996, more than a year before the filing date of the '212 application, and that its Fiery XJ product therefore anticipated each allowed claim of the '212 application.

d. The Applicants were aware of EFI's pending litigation as well as its allegations that the JetStream and Fiery XJ products anticipated every claim of the '212 application.

e. The JetStream and Fiery XJ products and their sale were material, as they disclose all of the elements of the claims of the patents-in-suit and therefore anticipate each claim of those patents.  On information and belief, EFI's letter of December 11 and its letter of December 17, 2001 were material, because they concerned litigation regarding "the subject matter for which a patent is being sought" and identified the JetStream and Fiery XJ products as anticipating the allowed claims of the '212 application.

f. Despite being aware of the JetStream and Fiery XJ products and EFI's letters of December 11 and December 17, 2001, and despite being aware of their materiality, the Applicants failed to disclose any information regarding them to the PTO with intent to deceive the PTO.

Brother intends to discover these facts alleged by the defendants in Whetstone I.  Thereafter, if Brother discovers additional substantiated bases of Whetstone's inequitable conduct in obtaining the '746 and '157 patents, Brother will amend its Answer, Affirmative Defenses, and Counterclaims to include those additional bases.

**MATERIAL REFERENCES CITED IN RELATED APPLICATIONS**

85.     On December 7, 1998, the Applicants filed a related foreign application claiming priority to the '212 application in The Patent Office for the United Kingdom (hereinafter, the "UK Patent Office"). This application was given application number GB 9826749.5 and later published as GB 2,334,356A.

86.     On June 10, 1999, a prior art search report by the UK Patent Office for application GB 9826749.5 identified two category "X" references. Category "X" references are documents that, taken alone, indicate lack of novelty or inventive step for the claimed invention in the United Kingdom. The first "X" reference listed in the UK Patent Office's prior art report is international publication WO 95/25310 A1, which was published on September 21, 1995. The second "X" reference listed in the UK Patent Office's prior art report is international publication WO 95/25307 A1, which was published on September 21, 1995.

87.     Upon information and belief, the Applicants were aware of the UK Patent Office's prior art report.

88.     International publications WO 95/25307 A1 and WO 95/25310 A1 provided examples of prior art peripheral add-in cards. The publications stated, however, that prior art "[p]eripheral cards typically include all interface, memory, and input/output (I/O) components in addition to the processor providing the essential function of the add-in card. However, such peripheral cards are inherently expensive because they necessarily include the cost of the

associated circuit elements, which are duplicative to the components already present in the computer."

89.     International publications WO 95/25307 A1 and WO 95/25310 A1 further stated that "the present invention provides a cost effective arrangement for an optional, high performance PowerPC-based peripheral add-in card to be inserted into a 040-based personal computer. The peripheral card containing the PowerPC microprocessor functions so as to override the 040 processor present on the motherboard of the computer, *while sharing essential functional components of the 040 system, such as memory and I/O*, thus improving computer performance equivalent to a PowerPC computer." (Emphasis added.)

90.     International publications WO 95/25307 A1 and WO 95/25310 A1 therefore distinguished themselves over the prior art by their ability to reduce costs by "sharing essential functional components of the [host] system, such as memory and I/O."

91.     The patents-in-suit also describe peripheral cards without duplicative memory. The Applicants stated that each prior art system "must have enough memory on it to store all of the data needed to print a full document page before it begins to output it to the photocopier. Consequently such an interface is expensive." '746 Patent at 1:21-24; '157 Patent at 1:24-27. The patents-in-suit attempted to distinguish themselves by noting that in their system, "[a]ll of the memory for storing image data for printing a full document is in the computer, and more specifically the computer motherboard RAM that is tightly coupled to the computer CPU, and not on the separate card." '746 Patent at 3:32-35; '157 Patent at 3:38-41. The patents-in-suit implemented this claimed sharing of memory through Direct Memory Access ("DMA") of the computer's motherboard RAM. '746 Patent at 3:41-45; '157 Patent at 3:47-51. As a result, the patents-in-suit claimed that the system "only requires some specially prepared software and the

novel interface card" and therefore can "provide a low cost capability of producing such documents." '746 Patent at 1:35-36, 3:48-49; '157 Patent at 1:39-40, 3:55-56.

92.     Thus, the Applicants described in the applications themselves that reduction of memory on the peripheral card by use of onboard memory was a key alleged benefit of the '212 and '473 applications and the '746 and '157 patents.

93.     Therefore, a key alleged benefit of the '212 and '473 applications – the reduction in cost compared to existing systems through reduction of memory on the peripheral card – was also disclosed in detail as the key feature of international publications WO 95/25307 A1 and WO 95/25310 A1.

94.     International publications WO 95/25307 A1 and WO 95/25310 A1 were material to the patentability of each pending claim of the '212 and '473 applications. Despite their materiality to the pending applications, and despite the UK Patent Office's indication of their materiality by identifying them as "X" references, the Applicants did not submit to the PTO either international publication WO 95/25307 A1, international publication WO 95/25310 A1, or the prior art search report from the UK Patent Office showing international publications WO 95/25307 A1 and WO 95/25310 A1 as "X" references.

95.     Each of the Applicants had "a duty to bring to the attention of the [PTO] any material prior art or other information cited or brought to their attention in any related foreign application." Manual of Patent Examining Procedure § 2001.06(c) (7th ed. July 1998). In describing this duty, the Manual of Patent Examining Procedure specifically noted *Gemveto Jewelry Co. v. Lambert Bros., Inc.*, 542 F. Supp. 933 (S.D.N.Y. 1982), "wherein a patent was held invalid or unenforceable because patentee's foreign counsel did not disclose to patentee's United States counsel or to the Office prior art cited by the Dutch Patent Office in connection

with the patentee's corresponding Dutch application." Manual of Patent Examining Procedure § 2001.06(c) (7th ed. July 1998).

96.     Despite this duty, and despite their awareness of international publications WO 95/25307 A1 and WO 95/25310 A1 as well as the UK Patent Office's classification of these publications as "X" references, the Applicants intentionally withheld this information from the PTO with intent to deceive the PTO, as the disclosure of any one of these references would have had a material impact on the patentability of the '212 and '473 applications.

## FIERY, SPLASH, AND COLORBUS SYSTEMS

97.     Throughout prosecution of the '212 and '473 applications, prior art products marketed as Fiery, Splash, and Colorbus were material to the patentability of each claim in the '212 and '473 applications.  The Applicants were well aware of these prior art products.  Upon information and belief, the Applicants intentionally failed to list the prior art products or patents and documentation concerning them in an Information Disclosure Statement. As a result, the Applicants withheld information from the PTO, with intent to deceive the PTO. If the Applicants had provided accurate information to the PTO in an Information Disclosure Statement, the disclosure would have had a material impact on the patentability of the '212 and '473 applications.

98.     To satisfy their "duty to disclose all information known to be material to patentability," the Applicants had an obligation to submit, by the "manner prescribed by §§ 1.97(b)-(d) and 1.98," "all information known to be material to the patentability of any claim," unless already cited by the PTO. Manual of Patent Examining Procedure § 2001 (6th ed. rev. 3 July 1997). The "manner prescribed by §§ 1.97(b)-(d) and 1.98" was an "Information Disclosure Statement." Manual of Patent Examining Procedure § 1.98 (6th ed. rev. 3 July 1997).

99.     The Fiery, Splash, and Colorbus systems were not cited by the PTO; therefore, the Applicants had a duty to disclose all material information regarding these systems. 37 C.F.R. § 1.98.    Despite this duty, however, the Applicants submitted no Information Disclosure Statements in connection with the '212 or '473 applications, even though disclosure would have had a significant and material impact on the patentability of the '212 and '473 applications.

100.     The Applicants were aware of the Fiery, Splash, and Colorbus products and their materiality to the patentability of the '212 and '473 applications. The Background section of the '212 and '473 applications stated that the Fiery, Splash, and Colorbus products included systems related to the technology disclosed in the patent applications and include a computer, a custom interface with memory, and a digital photocopier.  These technologies are also claimed in various claims of the '746 and '157 patents. In the Background section of the '212 and '473 applications, the Applicants even described the Fiery, Splash, and Colorbus products as "prior art." '746 Patent at 2:51-52; '157 Patent at 2:55-56.

101.     On information and belief, based on EFI's complaint in *EFI v. Coyle*, before the '746 Patent issued on January 8, 2002, inventor Jan Coyle alleged that various EFI boards, including Fiery and Splash, infringed the allowed claims.   These allegations reflect the Applicants' in depth knowledge of these systems. In order to believe that the EFI boards infringed the '746 patent, Coyle had to believe that the accused EFI boards met every limitation in one or more of the allowed claims that subsequently issued in the '746 patent, including the claim involving memory.

102.     Despite being aware of these references and their materiality, the Applicants failed to disclose any documentation regarding the Fiery, Splash, and Colorbus products to the

PTO with the intention of misleading the PTO, as the disclosure would have had a significant and material impact on the patentability of the '212 and '473 applications.

103.   During Whetstone I, the defendants made the following additional allegations:

a.   The Applicants described the Fiery and Colorbus products misleadingly in the Background section of the '212 and '473 applications, with intent to deceive the PTO.

b.   Although the Applicants were aware of the Fiery, Splash, and Colorbus products and their materiality to the patentability of the '212 and '473 applications, the Applicants' limited discussion of the Fiery and Colorbus products in the Background section of the '212 and '473 applications was materially misleading. The Applicants attempted to distinguish the '212 and '473 applications over the Fiery, Splash, and Colorbus products and similar systems by stating that "[t]his card is characterized by the fact that it must have only a small amount of memory. . . . In contrast, in prior art systems of the type mentioned at the outset, use is made of a card having a large memory sufficient to store all of the data needed to print a complete document." '746 Patent at 2:47-56; '157 Patent at 2:51-58.

c.   Neither the Fiery nor the Colorbus systems had sufficient memory on the interface card to store all of the data needed to print a full document.

d.   Thus, the Applicants materially misrepresented the technology of these related systems in the Background section of the '212 and '473 applications by stating that "a custom interface" of prior art systems such as the Fiery, Splash, and Colorbus "must have enough memory on it to store all of the data needed to print

a full document page before it begins to output it to the photocopier." '746 Patent at 1:15-22; '157 Patent at 1:17-27.

e.   As noted above, the Applicants failed to disclose any written documentation on these systems to the PTO – documentation that would have allowed the examiner to discover the misrepresentation on its own.

f.   The Applicants were or should have been aware of this misrepresentation.

g.   Despite being aware of these references and their materiality, the Applicants intentionally misrepresented the nature of the Fiery and Colorbus systems in the Background section of the '212 and '473 applications.

Brother intends to discover these facts alleged by the defendants in Whetstone I.  Thereafter, if Brother discovers additional substantiated bases of Whetstone's inequitable conduct in obtaining the '746 and '157 patents, Brother will amend its Answer, Affirmative Defenses, and Counterclaims to include those additional bases.

**NON-PUBLIC BASES FOR INEQUITABLE CONDUCT**

104.   As described above, Whetstone was the plaintiff in Whetstone I.  In that case, and as described above, the defendants made detailed allegations of inequitable conduct.  Some of those assertions are based on information that is not public, e.g., the Avery Jr. Notebook. Brother intends to discover those, and additional, facts in this litigation.  Thereafter, if Brother discovers additional substantiated bases of Whetstone's inequitable conduct in obtaining the '746 and '157 patents, Brother will amend its Answer, Affirmative Defenses, and Counterclaims to include those additional bases.

### NINTH AFFIRMATIVE DEFENSE
### (RESERVATION)

105.   Brother reserves all defenses under the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Brother prays for judgment and relief as follows:

A.   Dismissing Whetstone's Complaint with prejudice in its entirety;

B.   Denying all remedies and sought-after injunctive relief by Whetstone in its Complaint;

C.   Determining that the '746 and '157 Patents are unenforceable;

D.   Determining that this is an exceptional case under 35 U.S.C. § 285, and awarding Brother its reasonable attorneys' fees and costs incurred in this action; and

E.   Awarding Brother such further and additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Brother International Corporation demands a jury trial on all matters so triable.


Dated:  August 16, 2010                                Respectfully submitted,

                                                       /s/ S. Calvin Capshaw
                                                       S. Calvin Capshaw
                                                       Texas Bar No. 03783900
                                                       CAPSHAW DERIEUX, LLP
                                                       Energy Centre
                                                       1127 Judson Road, Suite 220
                                                       P.O. Box 3999 (75606-3999)
                                                       Longview, TX 75601-5157

Telephone: (903) 236-9800
Facsimile: (903) 236-8787
E-mail:  ccapshaw@capshawlaw.com

*Of Counsel*

David M. Schlitz
District of Columbia Bar No. 333369
BAKER BOTTS, L.L.P.
The Warner
1299 Pennsylvania Ave., NW
Washington, DC 20004
Telephone:  202-639-7700
Facsimile:  202-639-7890
E-mail:david.schlitz@bakerbotts.com

**Attorneys for Defendant Brother**
**International Corporation**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic

service are being served this 16th day of August, 2010, with a copy of this document via the

Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served

by electronic mail, facsimile transmission and/or first class mail on this same date.


<u>/s/ S. Calvin Capshaw</u>