**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **WHETSTONE ELECTRONICS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION No. 6:10cv278** |
| | § | |
| **XEROX CORP., et al.** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION & ORDER**

This claim construction opinion construes the disputed terms in U.S. Patent Nos. 6,337,746 ("the '746 Patent") and 6,618,157 ("the '157 Patent") (collectively "patents-in-suit"). Plaintiff Whetstone Electronics, LLC ("Plaintiff") alleges Brother International Corporation, Complete Business Systems, Inc., Konica Minolta Holdings, U.S.A, Inc., Oki Data Americas, Inc., Panasonic Corporation of North America, Inc., Star Graphics, Inc., Toshiba America Business Solutions, Inc., and Xerox Corporation (collectively "Defendants") infringe the '746 and '157 patents.

The Court held a status conference on April 6, 2011 to discuss streamlining this case for trial. *See* (Doc. No. 155). Defendants requested an early *Markman* hearing on three "case dispositive" terms, suggesting that early construction of these terms will allow each party to better evaluate its case moving forward. After considering Defendants' proposal, the Court ordered Defendants to submit the three proposed terms, along with the requisite briefing, and set a *Markman* hearing for July 13, 2011. *See* (Doc. No. 156). The parties have presented their claim construction positions on three terms: "computer," "interface card" and "printing device." (Doc. Nos. 200,

"DEF.'S BR.;" 206, "PL.'S RESP.;" 208, "DEF.'S REPLY"). Defendants have also filed a motion for summary judgment of non-infringement (Doc. No. 201, "DEF.'S MSJ;" Doc. No. 207, "DEF.'S MSJ REPLY"), to which Plaintiff has responded (Doc. No. 205, "PL.'S MSJ RESP."). On July 13, 2011, the Court held a claim construction hearing and heard argument (Doc. No. 213). For the reasons stated herein, the Court adopts the construction set forth below.

**CLAIM CONSTRUCTION PRINCIPLES**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313-1314; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp.v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction

because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to

read claim terms." *Id.*

## DISCUSSION

### A. Overview of Patents-in-Suit

The '157 Patent is a continuation of the '746 Patent (filed December 9, 1997) and they share a common specification.[1] *See* '157 Patent at RELATED U.S. APPLICATION DATA. Both patents are entitled, "Interface Card For Coupling A Computer To An External Device," and are generally directed at "the production of color or monochrome documents that contain graphic images and/or text." '746 Patent at 1:5-7. Plaintiff alleges that Defendants infringe one or more of claims 1-6 of the '746 Patent and claims 1-6 of the '157 Patent. *See* PL.'S RESP. at 1. The asserted claims include method and apparatus claims. *See e.g.* '157 Patent at 13:20-42 (apparatus claim); 14:21-40 (method claim).

The "primary object[s]" of the disclosed invention in the patents-in-suit are to "provide a low cost capability of producing [color or monochrome documents that contain graphic images and/or text]," produce such documents more efficiently than the prior art, and scan images on printed documents into computer data. '746 Patent at 1:35-41. The basic components necessary to form the described apparatus are a computer, interface card and printing device. *See Id.* at 1:44-54. The specification provides a block diagram demonstrating an exemplary arrangement of the components necessary to form the disclosed apparatus:

[1] Because the patents-in-suit share a common specification, all citations and references to the "specification" in this opinion will be to the '746 Patent.



*Id.* at 3:53-56; Fig. 1.

**B. Three "Case Dispositive" Terms**

Defendants have presented three terms, "computer," "interface card" and "printing device," contending that should the Court adopt Defendants' constructions, summary judgment of non-infringement is appropriate. DEF.'S MSJ. at 1-2. Based on the Court's review of the parties' arguments, however, only the term "interface card" is truly "case dispositive" should the Court adopt Defendants' proposed construction. *See* PL.'S MSJ RESP. at 7-8; DEF.'S MSJ REPLY at 2-3. Plaintiff has represented to the Court, both orally at the July 13 *Markman* hearing and in its Preliminary Infringement Contentions, that its infringement theory entails the Accused Products being "driven" by a stand-alone "computer" external to the printers. In other words, even if the Court adopts Defendants' constructions of "computer" and "printing device," Plaintiff's case will proceed because they are not accusing "all in one" printers, but external printers connected to a standalone computer or computer network. PL.'S MSJ RESP. at 5-7.

The Court permitted limited discovery and an early *Markman* process to avoid unnecessary

costs to the parties and to promote judicial efficiency on the premise that the case could be resolved on a discrete issue of claim construction. Accordingly, at this time, the Court need only provide a construction of the term "interface card," the sole term, based on the parties' presentations, that may potentially resolve the case at this early stage.[2]

### C. Interface Card

| **Term** | **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|---|
| **interface card**<br>**[**'746 Claims: 1, 3, 5, 6<br>'157 Claims: 1, 2, 4, 5, 6, 7**]** | a printed circuit board that provides data transfer between a computer and a printing device | a card within the computer, attached to the motherboard, for communicating data between the computer and an external printing device via both a serial port and a parallel port at the same time |

The crux of the parties' dispute can be narrowed to two main issues: (1) must the claimed "interface card" be physically attached to the motherboard (*e.g.* via a PCI slot) within the computer; and (2) must the claimed "interface card" have and use a serial and parallel port at the same time when communicating data to an external printing device.

*Location of Interface Card*

Defendants contend that the specification and prosecution history require the interface card be located within the claimed computer physically attached to the motherboard. DEF.'S BR. at 19. Defendants argue that every independent claim of the patents-in-suit requires the interface card be "connected to" the data bus on the motherboard inside the computer. *Id.* at 20. Therefore, Defendants assert, absent a contrary teaching which they contend does not exist, a person of ordinary

[2] While the Court need not construe the other terms at this stage, the Court finds Defendants' proposals unpersuasive. The terms need no construction as both can be understood by the jury without further definition and the inventors did not attach any special meaning to either term.

skill in the art would understand that the claimed interface card must be within the computer. *Id.* Defendants further contend that the inventors represented during prosecution that the architecture depicted in Figure 1 (*see supra* at 6, Fig. 1) of the patents-in-suit represents "the invention" and requires the interface card be within the computer. *Id.* at 20-21. Defendants characterize every embodiment of the invention as describing the interface card within the computer and on the motherboard. *Id.* at 21-22. Defendants further contend that installing the interface card directly on the motherboard is the sole way to achieve the inventors' stated objectives of cost reduction and increased data transfer speeds. *Id.* at 22.

Plaintiff contends that the Court should adopt the plain and ordinary meaning of the term "interface card." PL.'S RESP. at 9. Plaintiff argues that the claim language does not require the interface card be located within the computer nor did the inventors require such a limitation during prosecution. *Id.* at 10-11. Plaintiff further contends that the specification of the patents-in-suit do not require the interface card be physically attached to the motherboard. *Id.* at 11. Plaintiff asserts that a person of ordinary skill in the art would understand the phrase "connected to," as used in the claims, to merely require an electrical connection, not a physical attachment. *Id.* at 11. Moreover, Plaintiff asserts that Defendants' proposed construction would render the claim meaningless because the claims require the interface card be "connected to" both to the computer and the printing device and, thus, this would require reading the term "connected to" differently within the same claim. *Id.* at 11-14. Plaintiff also contends that Defendants' proposed construction improperly imports a limitation from the specification into the claims by relying on preferred embodiments. *Id.* at 14-18. Plaintiff asserts that the prosecution history does not contain a clear disavowal of claim scope and, thus, Defendants' proposed construction would improperly limit the full range of the claimed subject

matter. *Id.* at 18-21.

"The claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc.*, 381 F.3d at 1115). The parties do not dispute that the claim language fails to explicitly require the interface card be located within the computer attached to the motherboard. While the claims require the interface card be "connected to said data bus," they do not explicitly require the interface card be directly affixed to the motherboard within the computer. *See e.g.* '746 Patent at 12:30-57 (Claim 1).

Plaintiff is correct that Defendants' proposed construction, at best, renders the reading of the claims confusing. Claim 1 of the '746 Patent is an exemplary claim for the purposes of this discussion:

1. Apparatus for printing a graphic image on a substrate, comprising:

a computer containing at least one motherboard which carries a data bus and a random access memory, said computer being controlled by an operating system;

means for storing image data in said random access memory;

at least one interface card connected to said data bus and having a serial port connected to the data bus, a printing device interface, and means for transferring stored image data from said random access memory to said printing device interface;

a digital printing device connected to said interface for printing the graphic image on the substrate on the basis of stored image data transferred from said random access memory, the digital printing device communicating with the data bus via the serial port;

said printing device printing the graphic image in response to image data in a first format;

said means for storing image data storing image data in a second format different from the first format; and

said means for transferring stored image data comprising conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to said printing device.

According to Defendants' proposed construction, the "at least one interface card" (*id.* at 12:38) must be both physically "connected to" the motherboard (*id.* at 12:42-43; "connected to said data bus and having a serial port connected to the data bus") and physically "connected to" the "digital printing device" (*id.* at 12:43: "a digital printing device connected to said interface"). A word or phrase appearing in other places in the same claim is presumed to have a consistent meaning. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). Thus, reading "connected to" consistently throughout the claims in conjunction with Defendants' construction would require the interface card to physically reside both in the computer and the printing device simultaneously. Such a construction is untenable.[3]

[3] The Court notes that there is a open question of whether the "interface" ('746 Patent at 12:43) refers back to the "interface card" or "printing device interface." Reviewing the specification, it appears the Court need not resolve this issue to determine the proper construction of "interface card" because the "printing device interface" is claimed and described as a component of the "interface card." *See Id.* at ABSTRACT ("a card connected to the card connector and having a printing device interface"); *id.* at 1:48-49 ("at least one card connected to the data bus and having a printing device interface"). Without briefing by the parties, the Court cannot make a determination on the issue of indefiniteness at this time.

Moreover, the actual structure of the claims belies Defendants' proposed construction. The parties have focused on three main structural elements of the claims: (1) the computer containing, among other things, at least one motherboard ('746 Patent at 12:32-34); (2) at least one interface card connected to the data bus (*id.* at 12:38-42); and (3) a digital printing device connected to the interface card (*id.* at 12:43-47). Structurally, had the inventors intended the interface card to always be contained within the computer, they would not have set out the interface card as a separate element and instead would have included the interface card as a component of the computer (such as the motherboard, data bus and random access memory).

At the same time, the specification does not indicate that the inventors clearly intended to require the interface card be physically attached to the motherboard inside the computer. The Federal Circuit has occasionally "supplied a definition by implication, if the specification manifest[ed] a clear intent to limit [a] term by using it in a manner consistent with only a single meaning." *Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011) (citing *Irdeto Access, Inc.*, 383 F.3d at 1303; *SciMed Life Sys., Inc.*, 242 F.3d at 1344)); *see also Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340 (Fed. Cir. 2004); *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858 (Fed. Cir. 2004); *The Toro Company v. White Consolidated Indus., Inc.*, 199 F.3d 1295 (Fed. Cir. 1999); *Retractable Technologies, Inc. v. Becton Dickinson and Co.*, 2011 WL 2652448 (Fed. Cir. 2011). This is not such a case. While the claims must be read in light of the specification (*Phillips*, 415 F.3d at 1315), the inventors statements in the specification of the patents-in-suit do not overcome the "bedrock principle" that the claims, not the written description, define the invention. *Id.* at 1312; *id.* at 1327 (holding that baffle may be at right angle despite no such disclosure in specification). To do otherwise would be to improperly import

a limitation from the specification into the claims. The specification of the patents-in-suit does not provide a special definition for "interface card" nor does it clearly disclaim or disavow claim scope regarding the location of the interface card.

While Defendants are correct that the figures in the patent, in particular Figure 1, depict the interface card within the computer (DEF.'S BR. at 20, 21-22), "patent coverage is not necessarily limited to [an] invention that look[s] like the ones in the figures." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007). Again, to import limitations "onto the claim from the specification [is] fraught with 'danger.'" *Id.* (citing *Phillips*, 415 F.3d at 1323). The figures in a patent are not required to illustrate the full scope of the invention as disclosed in the claims.

The *Brief Summary Of The Invention* begins with two broad descriptions of the claimed invention which do not require the interface card to be physically attached to the motherboard. *See* '746 Patent at 1:42-54; 1:59-2:5. Only after these broad disclosures, does the specification then disclose narrower descriptions of the invention, on which Defendants focus, physically attaching the interface card to the motherboard.

Moreover, the inventors merely described the "novel card," *i.e.* the interface card, as "preferably" "having a connector for connection, via a card slot on the computer motherboard." '746 Patent at 2:43-46. In other words, Defendants reliance on these portions of the specification to *require* the interface card be attached to the motherboard inside the computer improperly imports a preferred configuration from the specification. When a term is to be limited by the specification, the inventor must demonstrate a "clear intent to limit [a] term by using it in a manner consistent with only a single meaning." *Arlington Industries, Inc.*, 632 F.3d at 1254. By explicitly stating that this

is only a preferred embodiment of the invention, limiting the scope of the claim language based on this statement would be improper. During prosecution, the patentee canceled the claims that explicitly recited a "circuit card" that carries a connector for connection to a data bus. *See* DEF.'S BR., EX. 8 at 3 ("[a] circuit card connectable to a motherboard in a computer . . . said circuit card comprising: a connector for connection to the data bus"); *see also* DEF.'S BR., EX. 5 at 13; PL.'S RESP. at EX. 7. Thus, reading the record as a whole, a person of ordinary skill in the art would not likely understand that the interface card must be physically attached via a card slot to the motherboard.[4]

Defendants also urge the Court to adopt their construction because allegedly "each and every embodiment of the invention" places the interface card within the computer and necessarily the scope of the claims should be limited as such. However, "even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Arlington Industries, Inc.*, 632 F.3d at 1254 (quoting *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1381 (Fed. Cir. 2009)); *Libel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2006)). The specification does not manifest a clear intent to limit the scope of the claims as Defendants contend. To the contrary, the inventors explicitly state such an embodiment is merely

[4] Defendants claim that they are not arguing that the interface card must be "physically connected via a card slot," but that they are merely requiring the interface card be located within the computer. DEF.'S REPLY at 6, n.7. However, Defendants ask the Court to import limitations from the specification based on excerpts that explicitly require connection "via a card slot." *See* DEF.'S BR. at 21 (citing '746 Patent at 2:43-46: "interface card having a connector for connection, via a card slot;"); DEF.'S BR. at 21 (citing '746 Patent at 2:6-8: "circuit card connectable in a card slot of a motherboard of a computer"); DEF.'S BR. at 20 (citing Figure 1, described at '746 Patent at 3:53-56 stating that interface card is a PCI or AGP card, *i.e.* connects via card slot); DEF.'S BR. at 22 (citing '746 Patent at 4:45-49: interface card connected via "edge connector" which may be a PCI or AGP connector). Defendants cannot have it both ways; if they contend that the specification must limit the scope of the claims, then they must be consistent and require the card to attach via a card slot as explicitly recited in the specification.

preferred. '746 Patent at 2:43-46.

The inventors describe the objectives of the claimed invention as cost reduction and faster data transfer between a computer and printing device. '746 Patent at 1:35-41. Based on the descriptions in the specification and prosecution history, Defendants contend that the only way to achieve such objectives is for the interface card to be physically attached to the motherboard via a PCI or AGP slot.[5] DEF.'S BR. at 22; DEF.'S REPLY at 6-8. However, Defendants merely provide attorney argument to support this assertion. A person of ordinary skill in the art in 1997 may indeed have read the patents-in-suit and determined that the sole way to achieve the stated objectives was to physically attach the interface card to the motherboard within the computer. Nonetheless, the Court cannot accept Defendants unsupported arguments to limit the claim scope without words of express exclusion. Nothing in the specification describes the actual physical location of the interface card as a paramount feature of the invention.[6]

Defendants rely heavily on the inventor's introductory statements rather than the specific arguments differentiating the claimed invention from the prior art. Defendants also rely on the same expository statements made by the inventors, which were parroted by the patent examiner in the Reasons of Allowance, describing the motherboard carrying a card connector to which the interface card is connected. *See* DEF.'S BR. at 21; DEF.'S REPLY at 7-9. These statements, however, fall short

---

[5] *See* n.4; Defendants again only provide citations describing connections to the motherboard via a card slot while arguing that the card slot component is not required.

[6] While the Court finds it improper to import a limitation from the specification and limit the scope of the claims in this case, there may remain an open question whether the specification enables or properly discloses the invention as asserted in this case. However, such a determination is premature and not intended as a function of this early claim construction process.

of a clear and unmistakable disavowal required to limit the ordinary meaning of a claim term.[7] *Teleflex, Inc*, 299 F.3d at 1327; *see also Salazar v. Procter & Gamble Co.*, 414 F.3d 1342 (Fed. Cir. 2005) ("the examiner's unilateral remarks alone do not affect the scope of the claim, let alone show a surrender of claimed subject matter.").

Based on the foregoing, the Court finds that Defendants' proposed construction improperly imports limitations from the specification into the claims regarding the location of the "interface card." "Claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Id.* at 1324. Defendants' proposed construction goes beyond simply defining the term "interface card." Instead, Defendants attempt to add a restrictive location requirement that fails to provide any understanding regarding the nature of an "interface card" within the context of the patents-in-suit. The Court cannot, on this record, import such a location requirement into the definition of "interface card."

*Serial Port And Parallel Port*

Defendants contend that the prosecution history of the patents-in-suit mandates that the

---

[7] Defendants selectively cite the Examiner's Reasons for Allowance. As discussed in the next section, Defendants contend that the interface card must carry a serial and parallel port. However, the Examiner in the Reasons for Allowance describes the interface card as "connected to a data bus and having a printing device interface and serial port for transferring stored image." DEF.'S BR., EX. 8 at 2. Using Defendants' logic regarding how the Reasons for Allowance should be interpreted, the Examiner viewed the invention as only requiring a serial port and no parallel port. Nonetheless, Defendants argue, contrary to the examiner's statements, that the interface card *must* carry both a serial and parallel port and that the inventors clearly disavowed any other configuration during prosecution. The Court does not find the examiner's unilateral statements dispositive in either instance. Such a situation demonstrates the danger of relying on the prosecution history to limit the scope of the claims, absent clear and unmistakable language of exclusion or disavowal.

claimed interface card have both a serial and parallel port that operate at the same time in the transfer of data from the "computer" to the "external printing device." DEF.'S BR. at 24. Specifically, Defendants argue that during prosecution, the inventors distinguished the invention over the prior art by requiring the interface card to use both a serial port and high throughput parallel port. *Id.* at 24. Defendants assert that the inventors explained during prosecution that the touted speed of the interface card over the prior art is facilitated by the interface card using a serial and parallel port simultaneously. *Id.* at 24-25. Accordingly, Defendants argue that the inventors clearly disavowed any interface card that does not use both a serial and parallel port. *Id.* at 25.

Plaintiff encourages the Court to rely on the claim language, which does not explicitly mention a parallel port. PL.'S RESP. at 22. Plaintiff further contends that the prosecution history demonstrates that the sole claim that required the interface card to carry a parallel port in combination with the serial port was ultimately canceled during prosecution. *Id.* Plaintiff moreover argues that the specification of the patents-in-suit describes a preferred embodiment carrying only a serial port; thus, Defendants' proposed construction would read out a preferred embodiment. *Id.* at 23. Plaintiff asserts that Defendants' "at the same time" requirement is derived from a selective reading of the prosecution history that does not demonstrate a clear disavowal of claim scope. *Id.* at 24.

The Court again looks to the claims to guide its constructions. *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc.*, 381 F.3d at 1115). None of the claims of the patents-in-suit require the interface card to carry a parallel port. However, the independent claims explicitly recite the use of a serial port. *See e.g.* '746 Patent at 1:37-40 ("at least one interface card connected to said data bus and having a serial port connected to the data bus"); *see also* '157 Patent at 14:48-50 ("at

least one interface card connected to said data bus and having a serial port thereon connected to the data bus"). Moreover, nothing in the specification of the patents-in-suit specifically requires the interface card to have a parallel port.

Given that the claims and the specification do not require the interface card to carry a parallel port, Defendants train their focus on statements in the prosecution history to demonstrate that the inventors disavowed use of a interface card that does not use both a serial and parallel port at the same time. DEF.'S BR. at 24-25. As previously explained, "a patentee may, through a clear and unmistakable disavowal in [the] prosecution history, surrender certain claim scope to which he would otherwise have an exclusive right by virtue of the claim language. At the same time, because prosecution history represents an ongoing negotiation between the PTO and the inventor, it often lacks the clarity of the specification and thus is less useful for claim construction purposes" *Trading Technologies Intern., Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010) (internal citations and quotations omitted).

Defendants cite the following statement in the prosecution history to support their assertion: "advantages are provided by utilization of a serial port in connection with a high throughput parallel port." DEF.'S BR. at 24. However, the same paragraph, prior to the sentence cited by the Defendants, reveals that the inventors amended claim 1 to overcome a prior art rejection by merely requiring a serial port with no mention of a parallel port: "arrangement such [as in the prior art reference] Kusters do not utilize an interface card in which a serial port of the type capable of communicating with the data bus is connected to the data bus." DEF.'S BR., EX. 5 at 8. Moreover, it is instructive that the inventors amended Claim 1 by merely adding a "serial port" with no mention of a parallel port. *Id.* Coupling that with the fact that the inventors later canceled the only claim that

explicitly recited a parallel port, the Court cannot find that the inventors unequivocally disclaimed interface cards lacking both a parallel and serial port. *See* PL.'S RESP. at 22 at n.8; EX. 7 (Amendment Received by the USPTO on June 7, 2001 while previous Amendment was Received December 9, 1999).[8]

Further, while the inventors made generic statements during prosecution of the patents-in-suit that the interface card used both a serial and parallel port (*see* DEF.'S BR., EX. 5 at 8), the Court does not find that the inventors' statements demonstrate a clear and unmistakable disavowal. To do so would be to rely on a non-final office action response while ignoring that none of the claims nor the specification require an interface card with both a serial and parallel port, and that the inventors ultimately canceled the only claim that required such a configuration of the interface card. (*see* PL.'S RESP. at 22 at n.8; EX. 7) (demonstrating that Plaintiff ultimately canceled the only claim that explicitly required a parallel port).

Defendants, moreover, urge the Court to require the interface card to *use* both a serial and parallel port *at the same time*. Even assuming that Defendants were correct that the interface card requires both a serial and parallel port, the prosecution history does not support both ports working at the same time. For example, Defendants cite to the following expository statements in the prosecution history to support a finding of a clear and unmistakable disavowal of claim scope:

> [a] high capacity parallel port is combined with a serial port. The serial port permits direct communication with the printing device or digital copier that is typically used in the

[8] The inventors also appear to have cancelled another claim, Claim 10, that included both the serial and parallel port concepts. *See* DEF.'S BR., EX. 8 at 3-4 ("[a] circuit card connectable to a motherboard in a computer . . . said circuit card comprising: a serial controller coupled between said circuit unit and said interface for transmitting a serial bit to the external device.; a parallel, multibit interface . . . wherein the serial controller and the parallel, multibit interface are both directly controlled by application software"); *see also* DEF.'S BR., EX. 5 at 13; PL.'S RESP. at EX. 7.

> system. ***At the same time***, the parallel port provides the greatly improved data throughput.

*See* DEF.'S BR., EX. 5 at 6 (emphasis added); *see also id.* at 8. Defendants contend that the phrase "at the same time" indicates that the inventors unequivocally required that the interface card use "both a parallel port and a serial port at the same time." DEF.'S BR. at 25. However, reading this phrase in context of the prosecution history, reveals the inventors likely intended to use the figurative meaning of the phrase. In other words, the inventors did not use "at the same time" to mean "simultaneously," but used it as a transitional phrase to mean "further" or "along with that." Nonetheless, even if reasonable minds may disagree as to how the phrase was used, this ambiguity alone undermines any assertion that the inventors clearly and unmistakably disavowed the scope of the claims.

*Construction*

As explained above, the Court is not persuaded by Defendants' proposed construction of "interface card." Therefore the Court finds that the plain and ordinary meaning of the term should be adopted. The parties appear to agree that the interface card is used to communicate data between a computer and an external printing device. The Court finds that while Plaintiff's phraseology requiring the interface card to "provide[] data transfer" between a computer and printing device may capture the plain and ordinary meaning, it may be presented more clearly for the jury's understanding. Accordingly, the Court construes "interface card" as "a printed circuit board for communicating data between a computer and a printing device."

## **CONCLUSION**

For the foregoing reasons, the Court adopts the construction set forth above.

**So ORDERED and SIGNED this 10th day of August, 2011.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE