

DiNovo Price Ellwanger & Hardy LLP
7000 N. MoPac Expressway, Suite 350
Austin, TX 78731
512.539.2631   (o)
512.539.2627   (f)
www.dpehlaw.com

September 16, 2011

The Honorable John D. Love
United States District Court
Eastern District of Texas – Tyler Division
William M Steger Federal Building and United States Courthouse
211 W. Ferguson, Room 210
Tyler, Texas 75702

      Re:    *Whetstone Electronics, LLC v. Epson America, Inc., et al.*;
              Cause No. 6:10-cv-00278-JDL;
              In the United States District Court for the Eastern District of Texas, Tyler Division

Dear Judge Love:

      This letter brief responds to the letter brief submitted by Defendants in this action dated September 2, 2011 ("Letter Brief") wherein Defendants contend that all claims of U.S. Patent Nos. 6,337,746 (the "'746 Patent") and 6,618,157 (the "'157 Patent") are indefinite for a host of reasons. For the reasons stated herein, Defendants request for leave to file a motion for summary judgment on indefiniteness should be denied, as this is a primary candidate for the Court's stated objective to use this letter brief mechanism because Defendants' positions are "not even arguably meritorious." For example, in the brief, Defendants have not even attempted to limit their best summary judgment positions to one or two terms, but have asserted that an five distinct terms render all asserted claims indefinite. Each position is demonstrably incorrect and leave should accordingly be denied.

**I.**    **CLAIM TERM: "SAID INTERFACE"**

      Defendants contend that the claims that contain the term "said interface" fail to provide antecedent basis, claiming that it could "refer equally to the 'interface card,' the 'printing device interface,' or another interface described in the specification." Letter Brief, p. 2. "[S]aid interface" refers to the "printing device interface." for which there is antecedent basis.

      Referring to claim 1 of the '746 Patent, "said interface" cannot refer to the "interface card" because, when referring to that structure, the term "the interface card" is used. '746 Patent, claim 5, 14:7-8 ("transfer of data between the interface card and the computer"); '746 Patent, claim 6, 14:36 ("the interface card …"). Consequently, "said interface" can only refer to the printing device interface.

      Moreover, the English language confirms this interpretation because "said interface" is the noun that is described by the "printing device" while "interface" in the context of the

September 16, 2011
Page 2



"interface card" is the adjective descriptive of the card.  Thus, the antecedent basis for the noun "interface" is its descriptive adjective "printing device," which conforms precisely to the nomenclature in the patents, as set forth above ("said interface" refers to "printing device interface"; the "interface card" refers to "the interface card").

Second, even if it was determined that "said interface" lacked antecedent basis, it is clear from the context of the claims that "said interface" refers to the "printing device interface." The claim term itself clarifies the issue: "said interface for printing the graphic image on a substrate." *See, e.g.,* '746 Patent, 12: 42-44.  Defendants' argument fails to account for the remainder of the claim, which is sufficiently descriptive to remedy any debate over the definiteness of this claim term.

## II.   CLAIM TERM: "PRINTING DEVICE INTERFACE"

Defendants contend that "printing device interface" is insolubly ambiguous because it is capable of numerous different constructions.  Defendants' position rests on their allegation that this claim term lacks adequate disclosure, teaching, or suggestion for the structure or operation of the "printing device interface."  Letter Brief at 2-3.

A claim is sufficiently clear to avoid invalidity on indefiniteness grounds "if the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001).  To respect a patent's presumption of validity, a court should hold a claim term indefinite only after reasonable efforts at construction prove futile. *Exxon Research*, 265 F.3d at 1375.

As set forth in the specification and drawings, the printing device interface is that portion of the interface card that connects and interfaces with the printing device. The printing device interface is illustrated in Fig. 2 of the patents-in-suit.

September 16, 2011
Page 3





FIG.2

Specifically, the specification refers to "custom add-on interface 46" and "custom interface board 38." See, e.g., '746 patent, col. 4, line 67 - col. 5, line 3. The custom interface board is described in detail in the specification, including the following characteristics: (1) is resident on the interface card (Fig. 2); (2) transmits data to the printing device (col. 6, lines 3-5); (3) can be constituted of one or two "daughterboards" to interface with a specific digital photocopier (col. 5, lines 4-6); (4) may store identifying information relating to the printer to which the data is to be transferred (col. 5, lines 10-14); (5) may be constructed to have an I2C operating capability (col. 5, lines 15-16); (6) may includes an I/O bus (col. 5, lines 62-63); and (7) may include one or more communication lines to the printer/copier (col. 6, 3-5).

### III. THE CLAIMS DO NOT IMPROPERLY MIX APPARATUS AND METHOD CLAIM ELEMENTS

Defendants contend that claims 1-2 and 5-6 of the '746 patent and claims 1-5 of the '157 patent are indefinite because they claim both an apparatus and the method steps of using the apparatus (*i.e.*, a mixed claim type). Letter Brief at p. 4. Defendants' position lacks merit. The descriptions of those apparata include functional descriptions of the components, which is completely permissible.

> A functional limitation is an attempt to define something by what it does, rather than by what it is (e.g., as evidenced by its specific structure or specific ingredients). There is nothing inherently wrong with defining some part of an invention in functional terms. Functional language does not, in and of itself, render a claim improper. *In re Swinehart*, 439 F.2d 210, 169 USPQ 226 (CCPA 1971).



MPEP 2173.05(g).

The cited portions of the claim state that the printing device prints an image responsive to data in a first format and that the serial port is operable for communication between the printer and the data bus. The Federal Circuit has clarified its holding in *IPXL* by ruling such functional language which merely describes the capability of the claimed invention will not render a claim invalid. *See Microprocessor Enhancement Corp. v. Texas Instruments Inc*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) (citing *Halliburton Energy Servs. v. M–I LLC*, 514 F.3d 1244, 1255 (Fed.Cir.2008)). The cited portions merely describe the design of the accused system. They do not create any ambiguity as to when infringement occurs, as in the cases cited by Defendants. *Accord Eolas Technologies, Inc. v. Adobe Systems, Inc.*, 2011 WL 3665342, 15 (E.D. Tex. 2011); *Convolve, Inc. v. Dell, Inc.*, 2011 WL 31792, 17 (E.D. Tex. 2011).

## IV. THE PATENTS NEED NOT DISCLOSE AN ALGORITHM

Defendants contend that the "means for reconfiguring" is a means-plus-function limitation that "implicitly requires" the use of a computer and thus must implement an algorithm. As set forth in Plaintiff's Opening Markman Brief (Doc. No. 255 at 18-20), while presumptively in means plus function format, the term "means for reconfiguring the interface card" incorporates specific structure in the claim language, specifically memory and flexible hardware chips. Plaintiff's construction incorporates that structure. Plaintiff's claim constructions are further supported by the specification, which explains how the image data and interface card are reconfigured for interfacing:

> The interface card further includes a pass through control 5 chip 26, an input FIFO data buffer 28, an output FIFO data buffer 30, two flexible, or user configurable, hardware chips 34 and 36, a custom interface board 38, a UART serial controller, or port, 40 and a configuration EEPROM 42. Custom interface board 38 is composed essentially of a 10 custom add-on interface 46, such as an RS422 interface. Interface 46 may be constituted by one or two daughterboards constructed to interface with a specific digital photocopier. Only the interface need be constructed to match the specific copier. Therefore, a single basic card can be adapted 15 to any digital photocopier by selection of appropriate daughterboards on board 38. The daughterboard, or one of the daughterboards, may store data identifying the daughterboard and this identifying data can be read by gate array logic on, for example, control chip 26 and then passed to the 20 main program to inform the latter of the identity of the copier assumed to be connected to board 38.

'157 patent, col. 5, lines 5-22. Thus, this term is not written in means-plus-function format. Specifically, the presumption resulting from the use of the word "means" is overcome by the claim's recitation of the structure, i.e. "including a memory within the printing device interface," underlying the means. *See Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d 1294, 1303-04 (Fed. Cir. 1999) (finding that the term "including" following "means" provides the structure

September 16, 2011
Page 5



underlying the means and, thus, the "detailed recitation of structure for performing the […] function takes this claim element out of the scope of § 112 ¶ 6."); *Searfoss v. Pioneer Consolidated Corp.,* 374 F.3d 1142, 1149 (Fed. Cir. 2004) ("The claim specifically recites the structure … thus overcoming the presumption resulting from use of the word 'means.'").

## V. THE CLAIMS DISTINGUISH BETWEEN THE TWO SERIAL PORTS

Defendants argue that Claims 5 and 6 of the '157 patent do not distinguish between two serial ports when referring to "the serial port." One is a serial port on the computer, which is irrelevant to the invention, and one is the serial port on the interface card, which is central to the invention. It is thus perfectly clear from the claims and patents that "the serial port" referenced in later portions of the claim is directed to "the serial port of the interface card." The entire excerpt from Claim 5 of the '157 Patent can only reasonably be read that "the serial port" refers to the "different" serial port:

> the serial port of the interface card being different from the at least one serial port of the computer and being driven by software which is independent of the operating system and which communicates directly with the serial port and is written to implement procedures for printing a graphic image

'157 Patent, 13: 57-62. When referring to the serial port(s) on the computer, the phrase "the at least one serial port" is employed. Moreover, "the at least one serial port" finds its antecedent basis in the first element of Claim 5, and therefor the "the serial port" cannot be referring to it. '157 Patent, 13:44 ("a computer containing at least one serial port …"). Thus, "the serial port" refers to "the serial port of the interface card" which is "different" from the "at least one serial port."

Accordingly, for the resaons set forth above, Defendants' arguments lack merit, and leave to file a motion for summary judgment on this basis should be denied.

Best regards,

Andrew G. DiNovo

Cc:   Adam Price [Firm]